UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEVONNA S., | ) | |
| | ) | |
| Plaintiff, | ) | No. 24-cv-8944 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Devonna S.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Plaintiff's motion for summary judgment[2] raises several issues with the Administrative Law Judge's ("ALJ") decision that Plaintiff claims warrant remand in this matter. The Court addresses the insufficiency of those issues, below. While Plaintiff is ultimately correct that a single job identified by the ALJ was obsolete and should not have been included in the ALJ's job availability numbers, the rest of the ALJ's decision withstands scrutiny, including the nationwide numbers of the remaining two jobs. Thus, the final decision of the Commissioner denying benefits is affirmed.

**1. Procedural History**

On July 24, 2020, Plaintiff filed for SSI, alleging disability beginning May 1, 1999. [Administrative Record ("R.") 408.] On April 19, 2023, an Administrative Law Judge ("ALJ") issued an unfavorable decision after holding two Administrative Hearings. [R. 141-52.] On September 27,

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2] "Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security" [Dkt. 17] has been construed as a motion for summary judgment by the Court, as has "Defendant's Memorandum in Support of Motion of Summary Judgment" [Dkt. 20].

2023, the Appeals Council vacated that decision and remanded the matter back to the ALJ for further consideration. [R. 160.] The ALJ held another Administrative Hearing on March 5, 2024, and issued a subsequent unfavorable decision on April 25, 2024. [R. 15-28.] The Appeals Council denied Plaintiff request for review, rendering the ALJ's April 25, 2024 decision as the final decision of the Commissioner. [R. 1-3.] 20 C.F.R. §404.981. Plaintiff has filed the instant action seeking review of the Commissioner's decision. [Dkt. 1.]

The Court will not summarize the ALJ's April 25, 2024 written decision, but will only note that key for the Court's purposes here, however, is the ALJ's determination that there were a significant number of jobs in the national economy Plaintiff could perform at positions of call out operator, circuit board assembler, and addresser. [R. 26.]

**2.     Social Security Regulations and Standard of Review**

According to the Social Security Act (the "Act"), a person is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). To determine whether an individual is disabled, an ALJ must apply a sequential five-step test. *See* 20 C.F.R. § 404.1520(a); *Langley v. O'Malley*, No. 22-cv-3008, 2024 WL 3649021, at *2 (7th Cir. Aug. 5, 2024) (citation omitted). The burden of proof is on the claimant for the first four steps, and on the agency at step five. *Langley*, 2024 WL 3649021, at *3; *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022). The Act requires all applicants to prove they are disabled as of their date last insured to be eligible for benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th

2

Cir. 2024); *see also* 42 U.S.C. § 405(g). If there is substantial evidence in support of the determination, the Court must affirm even if "reasonable minds could differ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018) (citation and quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (citation and quotation marks omitted). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion. *Hess*, 92 F.4th at 676. Yet, an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054 (internal signals and citations omitted). Additionally, "[w]hen reviewing a disability decision for substantial evidence, [the Court] will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052-53.

3.   **Discussion**

   A.   **Job Availability Numbers**

At Step Five of his decision, the ALJ found Plaintiff not disabled because she could work in the following representative occupations: call-out operator, circuit board assembler, and addresser. [R. 26.] When questioned at the Administrative Hearing by Plaintiff's counsel specifically on whether

these jobs were obsolete, the Vocational Expert ("VE") opined that these were still active jobs in that the call out operator and circuit board assembler jobs were performed similarly to their Dictionary of Occupational Titles ("DOT") descriptions [R. 53], and that although the addresser job still existed in marketing companies and hospital settings, it was done through data entry instead of via written means as indicated in the aged description in the DOT. [*Id.*] The ALJ nonetheless adopted these jobs as representative occupations Plaintiff could perform that existed in significant numbers in the national economy. [R. 26.]

Ultimately, it is the Commissioner's burden to establish work that exists in significant numbers in the national economy that a claimant can perform. *Chavez v. Berryhill*, 895 F.3d 962, 964 (7th Cir. 2018). ALJs can and do rely on VE testimony to aid them in these determinations. Yet, unreliable VE testimony cannot stand. *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008) ("a finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence"). As to job availability numbers, this means the VE's testimony must not be "facially implausible or incoherent." *Schmitz v. Colvin*, 124 F.4th 1029, 1033 (7th Cir. 2024) (citing *Brace v. Saul*, 970 F.3d 818, 822-23 (7th Cir. 2020)). Here, the VE's testimony was not facially implausible or incoherent. Thus, the ALJ was justified in adopting it, at least as it related to the call-out operator and circuit board assembler positions, which comprise a substantial number of jobs in the national economy. The Court cannot remand on this basis.

### i. Addresser Job

In 2011, the Social Security Administration ("SSA") itself acknowledged that addresser jobs likely do not exist in significant numbers in the national economy. *See* Mark Trapani, Deborah Harkin, *Occupational and Medical-Vocational Claims Review Study* (2011). Yet, more than a dozen years later, the SSA still has not formally conceded the addresser job (or any other job identified by Trapani and Harkin) is obsolete. But the Commissioner recently issued an Emergency Message,

4

EM-240274 REV, declaring, in part, that the job of addresser raises is potentially outdated and requires additional vocational development.[3] Case law further supports that the addresser job does not exist in a manner permitting the SSA to satisfy its Step Five burden. *Alaura v. Colvin*, 797 F.3d 503, 508 (7th Cir. 2015) (remanding after finding, *inter alia*, it "hard to believe" the VE's testimony that there were an existing 200,000 jobs in the United States in the occupation of "addresser" [] which involves "[a]ddress[ing] by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing"); *Daniel L. v. Kijakazi*, WL 5830807, at *9 (N.D. Ill. Sept. 8, 2023) ("'Addresser' is another half-century-old listing offered by the vocational expert in this case. And, given its description – '[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing', D.O.T. #209.587-010 – it's not surprising courts have been doubting its continued existence for years."); *Gass v. Kijakazi*, 2021 WL 5446734, at *8 (N.D. Ind. Nov. 22, 2021) (excluding as obsolete addresser job numbers when determining whether a significant number of jobs existed); *Yanke v. Kijakazi*, 2021 WL 4441188, at *3-4 (E.D. Wis. Sept. 28, 2021) (concluding that the job of "addresser" is resoundingly obsolete); *accord Mary E. M. P. v. Kijakazi*, 2022 WL 4545949, at *4 (N.D. Ind. Sept. 29, 2022) (finding addresser job obsolete and referencing the 2011 SSA study); *see also* Kevin Liebkemann, *Job Incidence Numbers in Social Security Disability Claims: A Case Study and Analysis*, 44 J. Nat'l Ass'n Admin. L. Judiciary 15 (2024) (providing, *inter alia*, a thorough analysis of the wildly varying job availability numbers different VEs give for addresser positions, almost as if the numbers were made up out of whole cloth).

  The VE's statement that the addresser job still existed in marketing companies and hospital settings, but was done through data entry, does not meet the Commissioner's burden at Step Five. *Ruenger v. Kijakazi*, 23 4th 760, 761 (7th Cir. 2022) (highlighting that it is the Agency's burden to

---

[3]  Available at https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM (last accessed Jan. 28, 2026).

demonstrate a significant number of jobs). As Plaintiff correctly argues, although the VE may have thought the addresser job continues to be performed as an unskilled, SVP 2,[4] job [R. 53], the VE was mistaken and, thus, this testimony is unreliable. *Britton*, 521 F.3d at 803.

The SSA takes administrative notice of job data from various sources, including from the DOT. 20 C.F.R. § 416.966(d). A review of the pertinent DOT code, 209.587-010, in a more recent Department of Labor publication, O*NET,[5] redirects the reader from addresser to "Word Processors and Typists." The O*NET confirms that the addresser job, while once consisting of addressing items for mailing by hand or typewriter (1991 WL 671797), now entails using customer relationship management software, enterprise resource planning software, office suite software, and presentation software, working with computers, communicating with supervisors, and performing administrative activities. *Id*. It requires constant telephone use as well as distributing and sorting mail, proofreading documents, operating office equipment, calculating financial data, scheduling appointments, formatting digital documents, and maintaining operational records. *Id*. While the addresser job the VE referred to required an SVP level of 2 [R. 53], O*NET data confirms that the updated version of such a job requires an SVP level of 4-6. *Id*. Neither the ALJ nor the VE made any finding that Plaintiff possessed the requisite transferable skills to be able to sustain a semi-skilled or skilled job, and an unskilled addresser job is unavailable in the modern economy.[6] Thus, the VE's testimony related to the addresser position is unreliable and the ALJ should not have deferred to it.

---

[4] SVP, or Specific Vocational Preparation, as defined in Appendix C of the *Dictionary of Occupational Titles*, is the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the skills needed for average performance in a given job.

[5] The O*NET has "superseded the DOT as the federal government's primary source of occupational information." *Horsley v. Commissioner of Social Security*, 2013 WL 980315 (S.D. Ohio Mar. 13, 2013). But see *Rosemary M. v. Colvin*, No. 21-cv-50446, 2025 WL 257178, at *3 (N.D. Ill. Jan. 21, 2025) for the proposition that the ALJ is not required to rely on the O*NET: "[a]lthough Plaintiff objected to this testimony in her post-hearing memorandum…the ALJ was not required to use the O*NET classifications in her decision."

[6] The Commissioner declined to address Plaintiff's argument that any updated version of the addresser job, presuming one even exists, far exceeds the skill limitations of the DOT's definition of that job and of Plaintiff's own skills.

Therefore, the Court cannot consider the addresser job numbers when determining whether the Agency has demonstrated a significant number of jobs that exist in the national economy that Plaintiff could perform.

### ii. Call-Out Operator Job and Circuit Board Assembler Position

With respect to the call-out operator job and the circuit board assembler position, when the VE was questioned about whether these jobs were obsolete, the VE opined that these jobs were still active jobs and were "performed very similar to the description in the DOT." [R. 53].

The DOT states that the call-out operator job requires an individual to compile credit information using the telephone and then copy such information onto a form to update a credit record on file. "Call-Out Operator," DOT Job No. 237.367-014, 1991 WL 672186. The worker is also expected to telephone the subscriber to relay the requested information or submit data obtained for a typewritten report to the subscriber. *Id*.

As to the circuit board assembler position, the DOT states that the circuit board assembler job entails inspecting printed circuit board assemblies for defects, such as missing or damaged components, loose connections, or defective solder. DOT Job No. 726.684-110, 1991 WL 679616. Plaintiff notes that if one enters the "Touch-Up Screener, Printed Circuit Board Assembly" DOT code into O*NET, it redirects to the "Inspectors, Testers, Sorters, Samplers, and Weighers" category. Plaintiff argues that this shows that the circuit board assembler job has evolved into a more technologically sophisticated job requiring the use of analytical software, computer aided design software, and database software [Dkt. 17 at 8], as the job now requires an individual to not only inspect items but also measure dimensions, notify supervisors of problems, measure materials, anduse tools such as rulers, calipers, gauges, and micrometers. While the circuit board assembler job the ALJ referenced requires a SVP level of 2 [R. 26], more current O*NET data confirms that the updated version of such a job requires an SVP level of 4-6, which is not as the DOT describes the position.

7

Available at https://www.onetonline.org/link/summary/51-9061.00 (last accessed Jan. 30, 2026).

Although Plaintiff also argues that the call out operator and circuit board assembler jobs are obsolete, neither of these jobs are identified in the Agency's recent Emergency Message (EM-240274 REV) identifying obsolete jobs. And as much as the Court believes the modern internet-era has potentially rendered the call-out operator position obsolete (or in such limited numbers as to be nearly obsolete), and changed the circuit board assembler position such that it likely falls below a "significant" number of jobs available, the VE's testimony on this point was not "facially implausible or incoherent." *Schmitz*, 124 F.4th at 1033 (citing *Brace v. Saul*, 970 F.3d 818, 822-23 (7th Cir. 2020)). " [A]ssuming there are no obvious flaws in the testimony, where a claimant has failed to put the vocational expert's foundation or methodology into issue and the expert's testimony is otherwise uncontradicted [as it was here], the ALJ is entitled to credit that testimony." *Id*.

Nor was the ALJ required to rely on the O*NET, despite Plaintiff's use of this resource. *Rosemary M.*, 2025 WL 257178, at *3 ("Although Plaintiff objected to this testimony in her post-hearing memorandum…the ALJ was not required to use the O*NET classifications in her decision"). It was perfectly appropriate for the VE to testify, as she did, that both jobs are still performed very similar to the description in the DOT. [R. 53.] *See Culver v. Saul*, No. 19-cv-1810, 2021 WL 2936310, at *3 (E.D. Wis. July 13, 2021) (remanding because although the court was suspicious that the jobs identified by the VE "would seem to have been supplanted with the internet and automation" "the actual nature of these jobs is a matter for the vocational expert."). As already noted above, the ALJ was permitted to rely upon the testimony from the VE, who is an expert in her field. *Mary Ann. R. v. Saul*, No. 18-cv-1368, 2019 WL 4645445, at *5 (N.D. Ill. Sept. 24, 2019) ("Unlike Plaintiff, however, the VE is an expert in assessing job functionality and availability…"); *Amy D. v. Kijakazi*, No. 21-cv-1646, 2023 WL 2242005, at *12 (N.D. Ill. Feb. 27, 2023) ("the Court is not convinced by Plaintiff's argument that we should remand because Plaintiff's analysis of the job data deserves more

weight than that of the VE, an expert in her field"). Indicators that a vocational expert's testimony was reliable included the expert's credentials, years of experience, and coherent and plausible testimony, which are unimpeached here. *Schmitz*, 124 F.4th at 1034. It is well-established that ALJs "may use vocational experts to meet [their] burden" at Step Five. *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 609 (6th Cir. 1995).

Thus, even if the ALJ erred when relying upon the addresser job, there were still approximately 23,800 call out operator and circuit board assembler jobs available in the national economy. Courts in this jurisdiction have held that as few as 17,000 jobs nationally constitute a significant number. *Nilda G. v. O'Malley*, No. 22 -cv-1542, 2024 WL 4647855, at *4, (N.D. Ill. Oct. 31, 2024) (17,000 jobs is significant); *see also Dorothy B. v. Berryhill*, No. 18-cv-50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (17,700 jobs is significant); *Misty H. v. Kijakazi*, No. 21-cv-3717, 2022 WL 4182390, at *6-7 (N.D. Ill. Sept. 13, 2022).

**B.     Consultative Examination Findings**

Plaintiff also alleges the ALJ was required to more thoroughly evaluate the consultative examination findings of Dr. Mark Langgut. [Dkt. 17 at 9-14.] But this is not so, as the ALJ's duty to articulate his analysis of Dr. Langgut's findings was minimal. *Berger*, 516 F.3d at 545. This is not a high bar for the ALJ to meet. *Biestek*, 587 U.S. at 103.

Dr. Langgut noted at his January 2021 consultative examination that Plaintiff displayed clear, normal speech. [R. 629.] She was strident and negativistic but fairly cooperative during the examination. [R. 630.] She did not display any signs of depression and denied depressive and anxiety symptoms. [*Id*.] Although she was easily irritable and mildly angered, her emotional presentation was within normal limits. [*Id*.] Dr. Langgut did not observe any behavioral abnormalities. [R. 631.] Moreover, Plaintiff demonstrated some unreliable judgment and impaired insight, she also demonstrated intact short- and long-term memory skills, basic computational skills, normal thought

processes, and clear consciousness. [*Id.*] Her overall Full Scale IQ score indicated she was functioning in the low average range. [R. 632.] The ALJ cited certain normal findings from Dr. Langgut's examination, while also mentioning Plaintiff's anger and need for redirection, and characterized the overall examination as yielding "average results." [R. 18-19.]

The same can be true of the ALJ's treatment of Dr. Langgut's examination findings – they were average. There was certainly nothing spectacular about the ALJ's analysis, but his analysis was not a failure in the sense that it minimally touched upon both positive and negative examination findings, and did not cherry-pick any particular results of Dr. Langgut's examination. And nothing in Dr. Langgut's report convinces the Court that a more thorough analysis of his findings would have materially changed the picture. *Barbara B. v. Saul*, No. 18-cv-50285, 2020 WL 70922, at *5 (N.D. Ill. Jan. 7, 2020) ("To the extent that plaintiff is making the more modest claim that the ALJ failed to discuss this evidence in sufficient detail, the Court is not convinced that a longer or more detailed discussion was needed or would have materially changed the picture").

Further, the Court is not persuaded by Plaintiff's argument that the ALJ needed to address the supportability and consistency of Dr. Langgut's findings, because Dr. Langgut did not provide a medical opinion in this matter. Although Dr. Langgut conducted a consultative evaluation and provided his examination findings [R. 629-34], he did not provide a medical opinion. Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions. 20 C.F.R. § 416.927(a)(1). Reports containing symptoms and diagnoses are not medical opinions because a medical opinion generally describes what the claimant can do despite the claimant's symptoms. *Dragan K. v. Saul*, No. 19-cv-3283, 2020 WL 4015326, at *3 (N.D. Ill. Jul. 16, 2020) ("diagnoses alone do not constitute medical opinions"); *Israel D. v. Kijakazi*, No. 19-cv-7666, 2022 WL 2046283,

10

at *7 (N.D. Ill. Jun. 7, 2022) (finding a summary providing a brief outline of symptoms and challenges is not a medical opinion). Here, Dr. Langgut did not provide any judgment about what Plaintiff could still do despite her impairments or what restrictions Plaintiff's impairments might cause. Accordingly, the ALJ was not required to evaluate the consistency and supportability of Dr. Langgut's findings and there was no error.

Finally, Plaintiff makes an argument that there were vocational inconsistencies that the ALJ should have resolved, but this argument appears to rest on whether "the ALJ evaluated Dr. Langgut's consultative examination findings properly." [Dkt. 22 at 7.] As addressed herein, the Court finds the ALJ needed to do nothing further with respect to Dr. Langgut's opinions. Moreover, the ALJ did not include any RFC limitation on Plaintiff's ability to carry out detailed instructions, or any mental limitations at all. [R. 21.] Thus, this argument is unpersuasive, and the Court will not address it further.

In sum, the Court cannot remand this matter based on the ALJ's treatment of Dr. Langgut's consultative examination findings, minimally adequate though they might be.

**4.     Conclusion**

For the foregoing reasons, the Court declines to remand this matter. Plaintiff's motion for summary judgment [Dkt. 17] is DENIED and the Commissioner's motion for summary judgment [Dkt. 20] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**ENTERED: February 6, 2026**

_____
Hon. Keri L. Holleb Hotaling
United States Magistrate Judge